UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TOMMIE MITCHELL,

        Plaintiff,

                                        Civil No. 08-13117
                                        Hon. John Feikens

        v.

OAKWOOD HEALTHCARE, INC.

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S**

**MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff Tommie Mitchell ("Mitchell") filed this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. At all times relevant to this action, Mitchell was employed by Oakwood Healthcare, Inc. ("Oakwood") and was covered by an employer-provided short-term disability protection plan (the "Plan"). Mitchell contends that Oakwood violated the Plan by denying her claim for short-term disability ("STD") benefits under the Plan. Currently pending before the Court is Oakwood's Motion for Judgment on the Administrative Record. The Court has reviewed the Motion, including the complete administrative record and all responsive pleadings, and has determined that a hearing on the matter is unnecessary. See E.D. Mich. LR 7.1(e)(2). The Court issues the following findings of fact and conclusions of law, and for the reasons stated below, Defendant's Motion is GRANTED.

## I.    STANDARD OF REVIEW FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

In *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), the Court of Appeals for the Sixth Circuit held that, in denial of benefits actions under ERISA, a district court should conduct a review based solely upon the administrative record at the time of the final determination, and render findings of fact and conclusions of law accordingly.  150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals regarding the appropriate standard).  The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.[1] *Id.*

There being no due process or bias challenge to the administrator's decision, the Court will decide this matter under the guidelines set forth in *Wilkins* by rendering findings of fact and conclusions of law based solely upon the administrative record. See *Eriksen v. Metro. Life Ins. Co.*, 39 F. Supp. 2d 864 (E.D. Mich. 1999).

## II.    FINDINGS OF FACT

### The Short-Term Disability Protection Plan

At all relevant times, Mitchell worked as a clinical charge nurse for Oakwood.  During her employment, she was covered by Oakwood's Short Term Disability Protection Plan, which was provided through and administered by Oakwood.  Jefferson Pilot Financial Insurance Co., d/b/a Lincoln Financial Group ("Lincoln") served as the claims consultant for the Plan.  To claim a

---

[1]On August 18, 2009, Mitchell submitted a Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment.  Attached as Exhibit 1 to that Brief was a letter from Dr. Murray, dated July 2, 2009.  As this letter was not part of the administrative record, and is not alleging a lack of due process or other procedural challenge, this Court will not consider the Supplemental Brief or Dr. Murray's letter attached thereto.

"disability" under the Plan, a participant must submit a physician certification that she is "unable to perform the material duties of [her] regular job." Under the Plan terms, she must also submit to the claims consultant an application for benefits, as well as *sufficient* medical evidence to support a claim. Each disability must be supported by *current* medical evidence, which may consist of medical records, narrative reports, x-rays, as well as evidence that the disabled employee continues to be under the appropriate care and treatment of a physician that is appropriate to the condition. The Plan may require a treating physician to substantiate a disability by *objective findings*.

The Plan also has a 14-day benefit-waiting period. Therefore, benefits are not paid for any disability lasting less than 15 days.

**Mitchell's Disability**

Mitchell's last day worked was May 2, 2007. The following day she reported to her treating physician, Dr. Elise Murray, with subjective symptoms including "severe fatigue, rapid heart rate, high blood pressure at work, increasing frequency of migraines [2-3 in the past month], and dizzy [sic]." Dr. Murray diagnosed Mitchell with hypertension, migraines, and palpitations, and disabled her from work for "several months," with an anticipated return around August 1, 2007.[2] Mitchell applied for STD benefits, listing her disability as intractable migraines, uncontrolled hypertension and palpitations, which she described as "chronic" conditions she had "over many yrs [sic]."

On May 18, 2007, Lincoln, as claims consultant to Oakwood, denied Mitchell's STD claim. Lincoln explained that the "medically standard recovery period for hypertension is 3-5 days and the

---

[2]During the appeals process, Dr. Murray extended the leave to September 1, 2007, then September 10, 2007, then October 1, 2007, and finally to November 30, 2007. It is unclear from the administrative record whether Mitchell has returned to work.

3

medically standard recovery period for migraine headaches is 1-3 days." Because the standard recovery periods for Mitchell's conditions were less than the 14-day benefit-waiting period, and Mitchell had not provided any information justifying an extension for her disabilities beyond those standard periods, Lincoln denied her claim. Lincoln also reminded Mitchell that, should she appeal the decision, she would need to provide "sufficient medical documentation to support that [she was] unable to perform each of the main duties of her regular occupation as a Clinical Charge Nurse."

On June 5, 2007, Mitchell submitted her first-level appeal to Lincoln. In her letter, which was submitted without supporting documentation, Mitchell described stress at work, and a "tremendous amount of stress with [her] personal life," including a terminally-ill mother and other ill family members. She explained, "[u]nfortunately, my work is the only stressor I can alleviate at this time." And although the medical records from May 31, 2007 indicated Mitchell had not had any migraines in the preceding two weeks, Mitchell claimed she was having migraines "at least once or twice a week."

On June 14, 2007, Lincoln notified Mitchell that it may be in her "best interest to submit additional medical records" by July 11, 2007. Specifically, Lincoln requested copies of medical records *from May 2007 forward* so that Lincoln could "have a clear picture of her *current condition*." Lincoln cautioned that "a note and/or letter from your physician(s) without any supporting documentation may not be sufficient to consider further benefits." Nevertheless, on June 29, 2007, Dr. Murray submitted her May 3, 2007 chart notes[3] with a letter simply reiterating that

---

[3] The chart notes from Mitchell's May 3, 2007 visit report no objective abnormal indications but list Mitchell's subjective complaints as "three migraines in the past month" which prevent her from working for 24 hours, and no chest pain but heart flutters with stress. Mitchell also explained that she had been traveling a lot because her mother was sick and lives out of state. Dr. Murray noted that Mitchell would return for a visit "in two to three weeks' time when she returns from her out of town trip to visit her mother."

2:08-cv-13117-JF-VMM   Doc # 35   Filed 08/21/09   Pg 5 of 16   Pg ID 575

"[a]s a result of [Mitchell's migraines and hypertension]. . . [she] is unable to work at this time as a nurse/manager."  Notably, Dr. Murray did not explain what treatments had been attempted, what medications had been prescribed and failed, or what was being done to improve the condition(s) and permit Mitchell to return to work.  Nor did Dr. Murray indicate that Mitchell's conditions prevented her from frequent travel (for weeks at a time) or caring for her mother.  Mitchell also submitted additional documentation, including a record from an orthopedic consultation for unrelated pain in her back/buttocks[4] and the results of a stress echocardiogram, reported as "normal" and "low risk."

On July 25, 2007, Lincoln denied Mitchell's appeal.  Based upon the claims notes and the denial letter, Lincoln considered the following factors:  (1) blood pressure within normal limits; (2) normal stress echocardiogram; (3) taking Naprelan for migraine, but no medication listed for hypertension; (4) no frequent office visits, hospitalization, or frequent changes in medication; and (5) "conditions are not significant enough that would preclude her from traveling or caring for her ill mother."  In summary, the medical documentation did not support restrictions and limitations that would prevent Mitchell from performing her job.

On August 6, 2007, Mitchell initiated her second-level appeal.  She submitted a July 30, 2007 letter from Dr. Murray reciting Mitchell's medical history, including migraine onset in 1978.  Dr. Murray indicated that Mitchell's migraines last two to three hours, followed by severe head pain that can last two to three days.  Dr. Murray concluded that, "[a]s a result these episodes do require time off work."  However, Dr. Murray did not explain why several months disability leave were appropriate.  Dr. Murray also attached *past* medical records from as far back as 2002.  Remarkably,

---

[4]This May 31, 2007 record also indicates that Mitchell was again "headed to Kentucky" for several weeks to take care of her mother.  In caring for her mother, Mitchell reports that she does "a lot of lifting."

5

a February 2007 record lists complaints of stress-related headaches, but notes that Naprelan "usually resolves her headache." The neurology reports submitted (from years before) were for treatment for involuntary head movements, not migraines. And while emergency room reports were submitted for migraines in prior years, there were no such reports around the claimed STD time-period in 2007. Finally, an ophthalmologist found a history of classic migraines with no ophthalmic pathology, and the 2006 MRI was negative.

In September 2007, as part of the second-level appeal, Lincoln submitted all available medical documentation for a medical peer review to Dr. Steven L. McIntire, a board certified physician in psychiatry and neurology. Dr. McIntire's report noted that there was no clear documentation of hemiplegia in the setting of a migraine headache. He also explained that while Mitchell was apparently precluded from using triptans for treatment of her migraines, there were "multiple additional abortive and prophylactic agents with which [she] could be treated." He found, "[t]he records do not demonstrate intractable or medically refractory migraines." Nor did the records suggest, from a neurological perspective, "significant impairments, restrictions or limitations." Dr. McIntire concluded that, based on the "neurological standard of care for the assessment and treatment of migraines," Dr. Murray's disabling Mitchell from work was "not reasonable and consistent with the medical findings."

On October 10, 2007, Lincoln sent Dr. McIntire's assessment to Mitchell, providing her "the opportunity to provide [the] assessment to [her] treating physician for further review/reply." Lincoln requested a reply by October 31, 2007. On November 29 and December 3, 2007, Dr. Murray and Mitchell submitted various medical records from as far back as 1984, apparently "to show [migraines] ha[ve] been a long standing prob[lem]." Although these records were submitted beyond

6

the deadline, it appears Lincoln considered them in its analysis.  Importantly, in 1998, a neurologist diagnosed Mitchell with complicated migraines, and suggested "[f]or severe headache episodes she can use Stadol nasal spray along with Naprosyn or Phenergan suppository.  If she starts having more frequent headaches, she can use Elavil or Depakote."   At the follow up the next month the neurologist noted that Mitchell was taking Naprelan for migraines (she continued to use this medication for migraines in 2007), and she had not had any more headaches since the previous month's visit.  There is no indication in the administrative record that Mitchell ever attempted the recommended treatment regimen for "severe" or "more frequent headaches."

On December 26, 2007, Lincoln again referred all medical documentation to Dr. McIntire for an independent review.  Dr. McIntire reviewed all records submitted to support Mitchell's claim. He noted that while Mitchell does have a history of headaches, including some sensory or visual changes, there are not objective deficits on neurological examination or on brain imaging to suggest functional limitations.  As Dr. McIntire explained, "Migraines are very common in the general population and are not infrequently associated with transient paresthesias (sensory symptoms) or visual symptoms."  Dr. McIntire noted that while Mitchell had presented to the ER several times (over numerous years) for migraines, office notes from 2007 (the claims period) reflect only two-three migraines per month, and another note indicated she had gone two weeks without a headache. Rather than disabling Mitchell from work, Dr. McIntire explained there were no "objective deficits . . . to suggest functional limitations" and there exist "multiple prophylactic and other medications that [Mitchell] could be treated with to ameliorate her migraine headaches."

On February 5, 2008, Lincoln notified Mitchell that it had denied her second-level appeal. Lincoln explained that Mitchell's neurological examinations, which were largely regarding

"treatment for involuntary head movement" and not migraines, found her to have normal strength and sensation without focal neurological deficits.  Mitchell's MRI, carotid ultrasound and stress echocardiogram were also negative.  Moreover, Mitchell's condition did not require frequent office visits, hospitalization, or frequent changes in her medication.  After reviewing Mitchell's medical records, and Dr. McIntire's expert opinion, Lincoln denied Mitchell's claim for benefits, reasoning that her "medical documentation does not . . . suggest functional loss . . . that would render you unable to perform your occupation. . . ."

Having exhausted the administrative review process, Mitchell now appeals Lincoln's denial of benefits to this Court.  She claims the denial is without merit and arbitrary.  Mitchell argues that (1) Lincoln does not deny or contest that Mitchell has these conditions [migraines and hypertension]; (2) Dr. McIntire did not examine Mitchell; and (3) the claims analysts unreasonably requested objective evidence of Mitchell's disabilities and inappropriately imposed a bright-line rule (the medically-standard recovery period) that was not expressly documented in the Plan terms.

## III.    FINDINGS OF LAW

## The Arbitrary and Capricious Standard Applies

Denial of benefits under an ERISA plan by the plan administrator is reviewed *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan provides the administrator with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court reviews that administrator's determination for arbitrariness or caprice. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983-84 (6th Cir. 1991).

The plan at issue in this case gives Oakwood "full authority and discretion to construe the terms of The Plan and the amount of benefits due." Moreover, it provides that the "Plan Administrator's construction of the terms of The Plan and decision as to a Participant's eligibility for the amount of benefits shall be binding and conclusive on all persons." This Court finds no ambiguity in the grant of discretion and will therefore apply the arbitrary and capricious standard of review.[5]

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (citation omitted). When applying this standard, the Court will uphold an administrative action "if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Id.* Stated differently, "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id. See also Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (citation omitted).

---

[5]Plaintiff argues that the following language removes discretion from the plan administrator:

> In order for a claim to be processed, the Claims Consultant must receive an application for benefits, as well as sufficient medical evidence to support a claim. All disabilities must be supported by current medical evidence. Such evidence may consist of medical records, narrative reports, x-rays, as well as evidence that the disabled employee continues to be under the appropriate care and treatment of a Physician that is appropriate to the condition. In the absence of such proof, the Claims Consultant may elect to suspend benefits until such proof is received.

This language, Plaintiff suggests, affords the plan administrator "minimal" discretion, and mandates that, if an individual supplies any evidence that she was disabled by her treating physician, "the Plan is obligated to pay on the claim." In light of the unambiguous grant of full discretion, and the further requirement that the evidence be "sufficient" and "appropriate" to support a claim, this argument is unconvincing. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 557 (6th Cir. 1998) (finding an administrator had discretion where the plan required submission of "satisfactory" evidence).

9

However, this standard is not toothless. The Sixth Circuit has explained:

> While a benefits plan may vest discretion in the plan administrator, the federal courts
> do not sit in review of the administrator's decisions only for the purpose of rubber
> stamping those decisions. As we observed recently, "[t]he arbitrary-and-capricious
> ... standard does not require us merely to rubber stamp the administrator's decision."
> *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald
> v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Indeed, "[d]eferential
> review is not no review, and deference need not be abject." *McDonald*, 347 F.3d at
> 172. Our task at all events is to "review the quantity and quality of the medical
> evidence and the opinions on both sides of the issues ." *Id.*

*Moon v. UNUM Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

Accordingly, after fully reviewing the administrative record, and considering the quantity
and quality of the medical evidence and opinions on both sides, "[i]t is only if the court is confident
that the decision maker overlooked something important or seriously erred in appreciating the
significance of evidence that it may conclude that a decision was arbitrary and capricious." *Eriksen*,
39 F. Supp. 2d at 870 (citing *Wahlin v. Sears, Roebuck & Co.*, 78 F.3d 1232, 1235 (7th Cir. 1996)).

**Mitchell Suffers from Migraines and Hypertension, But is Not Disabled Under the Plan**

Mitchell argues, without authority, that "Defendant does not deny or contest that Plaintiff
has these conditions [migraines and hypertension]." As the Sixth Circuit noted, "[t]he critical
question for purposes of [Mitchell's] eligibility for disability benefits is not whether she does or does
not have [the conditions], but whether she is disabled under the plan." *Huffaker v. Metro. Life Ins.
Co.*, 271 Fed. App'x. 493 (6th Cir. 2008). This Court finds that Mitchell does suffer from migraines
and hypertension, as well as a host of other ailments.[6] However, as more fully explained below, this

---

[6]Mitchell's original claim for disability listed migraines, hypertension and palpitations as
her disabilities. However, at various stages of the administrative proceedings (and again in the
Supplemental Brief filed on August 18, 2009), Dr. Murray and Mitchell have listed Mitchell's
other ailments, including but not limited to: history of urinary tract infections, gastroesophageal
reflux disease, chronic leukocytosis, fatty liver, allergic rhinitis, obesity, B12 deficiency,
osteoporosis, osteoarthritis, basal cell skin cancer, and benign left breast tumor. There is no

Court finds that Lincoln's determination that Mitchell is not disabled under the Plan is not arbitrary or capricious.

**Lincoln Appropriately Relied Upon a Non-Treating Physician's Opinion**

In support of her argument that Lincoln's denial of benefits was unreasonable, but again without citing any authority, Mitchell objects that "Defendant's doctor did not examine Plaintiff" and "Defendant did not have Plaintiff independently examined."

It is well established that a plan administrator need not defer to the opinions of treating physicians. In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) the Supreme Court explicitly rejected a treating-physician rule:

> [W]e hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Id. See also McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) ("Generally, when a plan administrator chooses to rely on the medical opinion of one doctor over that of another . . . the plan administrator's decision cannot be said to be arbitrary or capricious."). And while the Plan in this case gives the administrator discretion to order an independent medical examination, the administrator is not required to conduct a physical examination or hire an outside physician. *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005) ("Although [the Plan] provision *allows* [the administrator] to commission a physical examination of a claimant, there is nothing in the plain

---

evidence that any of these conditions were disabling at the time of Mitchell's May 2007 STD claim, and they were not listed among the disabilities for which Mitchell required STD benefits. Finally, there is no evidence of functional restrictions or limitations caused by these conditions that would prevent Mitchell from performing the duties of her job. Accordingly, this Court will not consider them in its determination.

language that expressly *bars* a file review by a physician in lieu of such a physical exam.")
(emphasis in original).

In this case, Dr. McIntire is board certified in neurology.  His reports demonstrate that he
conducted a thorough review of Mitchell's entire claims file.  He identified Mitchell's medical
conditions and referenced her treating physicians' findings and objective test results, which were
negative in all material aspects.  He found no evidence of functional restrictions or limitations, and
no objective findings supporting Mitchell's disability.  He also noted that there exist many
alternative treatments and medications that may ameliorate Mitchell's conditions.  Dr. McIntire
concluded that rendering Mitchell disabled was not reasonable and consistent with the medical
findings, based on the neurological standard of care for the assessment and treatment of migraines.
Having conducted a thorough review of the administrative record, this Court finds no evidence that
Dr. McIntire's file review was inadequate.  This Court finds Mitchell's attack on Lincoln's reliance
on Dr. McIntire's findings to be without merit.  *See McDonald*, 347 F.3d at 169.

**Lincoln Reasonably Requested Objective Evidence of Mitchell's Disability**

Lincoln repeatedly indicated in its denial of Mitchell's claims that she lacked "objective
evidence" of her disabling conditions.  It also rejected Mitchell's claims because her disability
period exceeded the medically-standard recovery period for her conditions without sufficient
evidence for the requested duration.  Mitchell objects that "[t]here is nothing in the Plan the [sic]
discusses this term or puts the disabled employee on notice of what is required."

The Sixth Circuit has held that a disability benefits plan can require a claimant to provide
objective evidence of disability.  *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007)
(citing *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002))

("Requiring a claimant to provide objective medical evidence of disability is not irrational or unreasonable."). The definition of "disability" at issue in *Cooper* was similar to the definition in this case. Specifically, it required that a claimant prove inability to perform "all the material duties of his or her Regular Occupation." *Id*. at 159-60. The Sixth Circuit found that the objective-evidence requirement was reasonable because "[o]bjective medical documentation of [the claimant's] functional capacity would have assisted [the administrator] in determining whether [the claimant] was capable of performing 'all the material duties of her Regular Occupation.'" *Id.* at 166.

Here, Mitchell must similarly prove that she is "unable to perform the material duties of [her] regular job." The Plan also defines Proof of Claim to require "sufficient" "current medical evidence" of "appropriate care and treatment" that is "appropriate to the condition." Moreover, the Plan gives Lincoln discretion to require an independent medical evaluation if the treating physician cannot *substantiate* a disability with "objective findings." In addition, as discussed above, the Plan affords the administrator "full authority and discretion" to construe the terms of the Plan and determine whether a Participant is eligible for benefits and in what amount.

As in *Cooper*, Lincoln could reasonably interpret the Plan's language to require objective evidence of a disability. The administrative record indicates (and Mitchell concedes) that *when* Mitchell suffers a migraine, she is incapacitated for several hours, or at most 2-3 days.[7] This time period is consistent with the "medically-standard recovery period" referenced in the denial-of-claim letters. Dr. McIntire's reasoned opinion further supports Lincoln's position. Specifically, Dr. McIntire found no evidence of functional limitations and no justification for an extended disability. He concluded that an extended leave was unsupported by the record and inconsistent with the

---

[7] There is no evidence in the record of Mitchell being incapacitated by her hypertension or palpitations.

13

neurological standard of care for migraines. Moreover, he advised that numerous medications could be used to treat Mitchell's conditions without totally disabling her. Therefore, this Court finds that Lincoln's determination that an extended disability leave is not warranted for Mitchell's conditions is a reasonable exercise of its discretion.

## Lincoln's Denial of Benefits is Not Arbitrary or Capricious

Applying the foregoing authorities to the facts of this case, the Court finds that Lincoln's decision, as Oakwood's claims consultant, to deny Mitchell's claim was not arbitrary or capricious. The record clearly establishes that Lincoln did not overlook any evidence or err in appreciating the significance of the evidence presented to it. *Eriksen*, 39 F. Supp. 2d at 870. While it appears that the administrator relied heavily upon Dr. McIntire's report, the evidence is clear that both Dr. McIntire and the claims administrator conducted a thorough review of all medical records and other documentation in the administrative record. The documentation failed to provide sufficient evidence to support Dr. Murray's recommendation that Mitchell be totally disabled from working, apparently indefinitely, based upon her reported disabilities. To the contrary, the medical records, including MRIs, a carotid ultrasound, ophthalmology reports, orthopedic reports, and stress echocardiograms, were objectively negative for functional deficits or neurological abnormalities. Notably, while Mitchell and Dr. Murray submitted many records describing Mitchell's medical history going back several decades, the record is nearly devoid of evidence of her conditions at the time of her STD application. Instead, Mitchell relies largely on her subjective complaints of migraines and her self-reported high-blood pressure (again, largely unverified with objective medical evidence).

Moreover, as Mitchell argued, she has a long history of migraines, perhaps for as long as 30 years, and a long history of hypertension. The medical records indicate that Mitchell had previously

14

been able to work in stressful environments (in Mitchell's subjective description) despite her medical conditions. In addition, the medical records indicate that Mitchell had taken the same medication (Naprelan) for her migraines since at least 1998. In February 2007, just three months before her alleged disability, Mitchell reported that Naprelan usually resolved her headaches. Nothing in the administrative record indicates that the medication had stopped working. Also, while Mitchell subjectively suggested that stress exacerbated her conditions, there is no objective evidence of any marked increase in the severity or frequency that would justify a total disability. In fact, on the day Dr. Murray disabled Mitchell, Mitchell reported having had only three migraines in the previous month, and she reported having gone at least two weeks without a migraine the following month. The records also indicate that, despite her conditions, Mitchell was able to continue to travel frequently, for weeks at a time. She was also able to care for her mother during this period, a task she reported required "a lot of lifting."

In denying Mitchell's claim, Lincoln also noted the lack of evidence that Mitchell requires frequent medical treatment, frequent medication changes, or hospitalization in its denial of benefits. During the disability period, Mitchell saw Dr. Murray infrequently, with at least two months between some visits. After reviewing the records, there is nothing to suggest that Dr. Murray was attempting any alternative medications or treatments to resolve Mitchell's conditions – including pursuing the medications previously suggested by a neurologist (Stadol, Naprosyn, Phenergan, Elavil or Depakote). And although Dr. Murray was provided with each of Dr. McIntire's assessments, which indicated that many other prophylactic and abortive medications were available, Dr. Murray neither addressed/refuted Dr. McIntire's opinions nor attempted alternative treatments as suggested.

15

In summary, there is no objective evidence of record to support Dr. Murray's recommendation to totally disable Mitchell. By contrast, the objective evidence submitted to Lincoln provided no support for total disability. Therefore, Lincoln's decision to deny Plaintiff's claim was reasoned and supported by substantial evidence. This Court finds the denial of benefits was not arbitrary or capricious.

Accordingly, Defendant's Motion for Judgment on the Administrative Record is GRANTED.

**IT IS SO ORDERED.**

Date:   August 21, 2009                  s/ John Feikens

                                                  John Feikens
                                                  United States District Judge

---

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on August 21, 2009, by U.S. first class mail or electronic means.

                     s/Carol Cohron
                     Case Manager

---